UNITED STATES DRAINAGE & IRRIGATION CO. v. MANAHAN.

(Circuit Court of Appeals, Third Circuit.   November 2, 1917.)

No. 2297.

PATENTS &==328—VALIDITY—TRENCHING DEVICE.

 The Skinner patent, No. 962,723, for an auxiliary tool for use in connection with spades, claims 1 and 2 are invalid, as too broad, covering, as they do, the use of an old device for the old purpose of venting the vacuum caused in the use of any trench-digging tool in wet ground.

Appeal from the District Court of the United States for the District of New Jersey; Charles P. Orr, Judge.

Suit in equity by the United States Drainage & Irrigation Company against Jesse P. Manahan. Decree for defendant, and complainant appeals. Affirmed.

For opinion below, see 236 Fed. 144.

Munn, Anderson & Munn, of New York City (T. Hart Anderson, of New York City, of counsel), for appellant.

Francis C. Lowthorp, of Trenton, N. J., for appellee.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. E. M. Skinner, the plaintiff's assignor, made application January 30, 1908 (Serial No. 413,400) for a patent for a trenching device. A division was ordered, and in due course two Letters Patent were issued—No. 926,145 for a "trenching device" and No. 962,723 for an "auxiliary tool for use in connection with spades." The plaintiff sued for infringement of the latter patent. The District Court dismissed the bill on the ground that claims 1 and 2 (the only claims in issue) were invalid because of prior uses and lack

---

of patentable invention, and, even if valid, the claims, being necessarily limited to the particular tool of the patent, had not been infringed. The plaintiff appealed.

The parties are and for a long time have been rival contractors for draining marshes and meadows in mosquito infested districts. Marshes are drained by running ditches or trenches of depth, length and direction sufficient to carry off the water. Before the inventions spoken of in this litigation, the tools with which trenches were dug were long-handle spades with blades varying from 8 to 10 inches in width and from 12 to 20 inches in length. The way in which trenches were dug with such tools was to cut the turf along both sides of the proposed trench and then dig out the earth between the lateral lines so cut and marked.

Wet marsh earth presented difficulties. Being heavy, several spadesful were required to reach the desired depth. Being soggy, it lacked the stability necessary for a fulcrum upon which to bear the spade in raising the load from place. The spade handle, when pressed down to lift up its load, would sink into the wet earth. To meet this difficulty and to obtain a leverage which the earth would not afford, trench diggers employed the obvious expedient of putting any available piece of wood back of the spade and using it as a fulcrum.

The sogginess of marsh earth presented still another difficulty. It developed a suction, which occurred when the spade was driven in, and which held the blade fast, or, as described by the patentee:

"As the spade is moved to remove the sod, a vacuum tends to form between the spade and the transverse wall of the trench. Unless the vacuum is destroyed, it is almost impossible to remove the sod."

This suction was so great that, in exerting force to lift the sod, the handle of the spade sometimes broke before the earth yielded and the blade was released. It was obvious that this suction had to be overcome, and the means employed to overcome it was equally obvious. The laborer drove the spade into the earth, and then, instead of pulling back on the spade handle in an effort to lift it, as he would do in digging dry earth, he first thrust the handle forward, thus separating the blade from the earth in the rear and breaking the suction by opening the vacuum, and then put behind the blade a piece of wood, board, rail, barrel stave, or anything handy, so that on the reverse motion of the lift, suction would not be re-established. Thus in the prior art, suction, its problem, and means to overcome it, were known and dealt with.

Letters Patent No. 926,145, the first of the two patents issued on the division, was issued for a trenching device. It is not here in suit, but as the device of that patent is the principal device to which the device of the patent in suit is auxiliary and concerning which much of the testimony relates, it is necessary to speak of it and to distinguish it from the device of the patent in suit (No. 962,723). The trenching device of the first patent is a spade-like tool with a large blade about 12 inches wide and from 24 to 30 inches long. The lower edge of the blade is pointed and sharpened, and cutting edges project at right angles from its sides. It is somewhat suggestive of a

giant trowel with a blade abruptly turned instead of curved. The handle is a double arrangement intended to add leverage and aid lifting. In operation, the lateral knife-like projections perform the work which was done before by cutting the sod with an ordinary spade, and the main body of the blade of unusual size lifts a large core or plug of earth in one movement. A framework or a pair of boards placed laterally along the trench is used as a fulcrum for lugs or metal pieces outstanding from and in the plane of the blade. In inventing this device the patentee certainly made an improvement on the old trench spade, but he pointed out nothing new in the way of using it, for he employed a fulcrum similar in principle to the ones crudely used in digging with spades. This patent provides no means to overcome suction. That was left, on division, to the second Skinner patent.

Shortly after Skinner filed his application and before Letters Patent No. 926,145 for a "trenching device" was issued to him, Manahan, the defendant, made application and was granted Letters Patent No. 902,983, for a "digging implement." As the plaintiff does not charge infringement of Skinner's "trenching tool" by Manahan's "digging implement," neither patent is in suit. It is sufficient to say that the devices of these patents are different in construction, but similar in performance.

The advent of one or of both of these tools unquestionably wrought a great advance in the art of trench digging in marsh and meadow lands. Between 60,000,000 and 70,000,000 lineal feet of trenches of superior conformation have been dug with tools of the two designs. With the Skinner trenching device, 1,200 lineal feet of trenches can now be cut by three men in a day, as against 250 feet cut by the same number in the same time with ordinary spades. This difference has not only cheapened the operation of trench digging to overcome the mosquito pest, but has so reduced the cost that such adventures are financially possible, when before the old cost was in some districts prohibitive. How much credit for this achievement should be given the tool of the patent not in issue it is difficult to say, but that some credit must be given it and that all credit should not be given the auxiliary tool of the patent in suit must be admitted.

The plaintiff says in effect that the whole credit should be given the patent for an auxiliary tool, for without that tool it is impossible, because of suction, to use the very excellent trenching device of the first patent, that the tool which appears to be the minor invention is in truth the major invention, and to it should be credited the achievement of eradicating mosquitoes by marsh trenching at non-prohibitive cost.

The patent in suit (No. 962,723), as we have said, is for an "auxiliary tool for use in connection with spades." Strictly speaking, this tool is auxiliary to and intended particularly for use in connection with the trenching device of the first patent (No. 926,145), because it is the tool of a patent issued on the division of the application on which the first or trenching device patent was issued, and because the patent for the auxiliary tool refers to the device of the first patent by

serial number (No. 431,400) and shows diagrammatically its use in connection with that device. Though being really auxiliary to that device, the claims are not for an auxiliary tool alone, or for a tool auxiliary to that particular device, but are for a combination of an auxiliary tool with any tool or device used for digging trenches. The claims as drawn are even broad enough to cover the use of such a tool with spades of the prior art. They are:

"(1) In combination with a tool for digging trenches, a removable venting device adapted for insertion at the rear of said tool;

"(2) In combination with a tool for digging trenches, a removable back bar adapted for insertion at the rear of said tool."

The "auxiliary tool" of the patent title, mentioned in the claims as a "venting device," is described in the specification as a stake or stick with a point at one end and a handle at the other, with grooves on opposite sides extending lengthwise from top to bottom. No invention can be found in giving a stick a point and a handle. Invention may reside in the lateral grooves. Upon this, we are not called upon to express an opinion. The venting device of the patent, as urged by the plaintiff and as broadly claimed in the patent, is not limited to a stake or tool as described in the specification and shown in the diagram, but extends to any stake, stick, stave, rail or board, that is small enough to be inserted in the hole made by the trenching device and is large enough to break the vacuum and prevent it re-forming. The function of such a stake, stick or board used as an auxiliary to a trenching device to vent a vacuum is precisely the same as that performed by a like piece of wood when years before it was used as an auxiliary to a spade. The plaintiff, however, disclaimed at trial that the claims in issue cover the early use of a venting stick as an auxiliary to a spade, but maintained that the patentee first disclosed the use of such a stick with such a function in conjunction with a "trenching device," that the combination of such a stick with such a device amounts to invention, and that anyone who uses a plain stick, stake or board, as a means to vent a vacuum binding the blade of any trenching device, infringes.

This contention of counsel is consistent with the breadth of the claims in issue, for if construed as they read, they not only cover the stick thrust behind the spade in the early art, but they cover any stake or stick used to vent a vacuum made by any present or future "tool for digging trenches." These are very broad claims. What did Skinner do to entitle him to claims of such breadth? In using the venting stake of the prior art as a venting device for a modern trenching device, Skinner applied an old means to overcome a known physical difficulty ever present in the art, whether the operation be with old or new devices. Suction occurs in operating new trenching devices precisely as it occurred in digging with a spade. Suction being present in both, the problem is the same in both. The size or design of a modern trenching tool does not do away with suction or change its problem. Skinner used the venting stake or stick of the old spade as a venting tool, stake or stick, for the new patented device. In doing this, he did not put an old means to a new use. He adapted an old

means to an old use, and employed it in the same way and caused it to perform the same function in solving the same problem. The trenching device of the first patent is so superior to the old spade as a trenching tool that perhaps it may be called a different tool, as insisted by the plaintiff, yet after all, it is nothing more than a marsh digging tool. While the modern trenching device, whether Skinner's or Manahan's, is a great improvement over a trenching spade, yet it is operated just as the old spade was handled, by driving it into the earth, thrusting the handle and blade forward to break the suction, inserting a stake or stick back of the blade, and then drawing the blade back, and with the vacuum still broken, lifting the earth from place.

The function of the venting stake or stick in preventing suction, therefore, is identical in marsh digging tools, whether old or new, and the use of the stake or stick to overcome suction, developed by tools, whether new or old, large or small, superior or inferior, is so well known that we think the claims appropriating broadly the function of such a stake or stick for use in combination with "a tool for digging trenches," which means with *any* tool for digging trenches, are too broad to be valid. We therefore affirm the finding of the District Court that claims 1 and 2 of the patent in suit are invalid, and direct that

The decree below be affirmed.